## STATE v. ROBINSON.

1. The judge having fully instructed the jury as to the law of insanity and their duty to acquit the prisoner, if insane when he committed the homicide, did not err in refusing to instruct them that the court was authorized to send the prisoner to the asylum if found by their verdict to be *non compos*. This was a matter with which the jury had no concern.

2. In cautioning the jury not to allow their sympathies to influence their verdict, the judge did not charge on the facts.

3. An indictment is not vitiated by concluding "against the peace and dignity of the same State aforesaid" instead of "against the peace and dignity of the State," as prescribed by the constitution. The additional words did not vary or obscure the sense, and may be rejected as surplusage.

Before WITHERSPOON, J., Beaufort, October, 1886.

This was a prosecution against Sye Robinson for murder. The defence was insanity. The portions of the charge excepted to were as follows:

It is my duty to give you the law, and in giving you the law I cannot indulge in sympathy. It is a noble impulse of the human heart; it has its place, but its place is not here; I am here to tell you what the law is, and you are here to decide whether or not the law in a given case has been violated, for after the law has been given to you, you are to evolve from the facts of the case by the law as applied to that case, and in so doing, you are to throw aside all sympathy and everything extraneous and indulge in nothing but a fair and impartial consideration of the guilt or innocence of the prisoner at the bar, solely under the law and the testimony of the case, as given to you by the court and as you hear it from that stand, you being the sole judges of the testimony. * * * When you go into your room for your conscientious impartial deliberation under your oaths, to ascertain whether or not the law has been violated, it is for you to say whether or not you can in your consciences give a reason why this prisoner should not be convicted. If so, it must be a reasonable conscientious doubt, not a doubt produced by sym-

pathy or anything of that kind; it must be a doubt that comes out of the facts in the case and that is a reasonable doubt, the benefit of which the law always gives the prisoner at the bar. Now, gentlemen, is this party guilty beyond a reasonable doubt of the offence with which he stands charged ? That is for you to say. * * * I am satisfied that you will take this case and decide it according to the law as I have given it to you. You must take it without sympathy. The kind of feelings that the human heart indulges for the unfortunate, must not restrain you from doing your duty. Has the law been violated or not ? If it has, and the testimony satisfies you beyond a reasonable doubt, then will your verdict be guilty. If it does not, then will your verdict be not guilty.

I have been requested to charge you : "If the defendant is proved upon this trial to be *non compos mentis,* the court is authorized to send him to the lunatic asylum." I will not charge you upon this point. I charge you that you must decide without reference to consequences. You have nothing to do with what the court will do hereafter, for that is going outside of the case. You must consider this case with reference to the law and evidence at the time he killed that man, considering whether or not at that time he was sane ; if he was sane, and knew right from wrong, at that time—had sufficient exercise of his reasoning power to discriminate between right and wrong—knew the consequences of his act at that time, and killed him with evil intent, with malice aforethought, either expressed or implied, he is guilty of murder. Therefore you cannot consider the question with reference to outside matters, because if I were to charge you upon them, that would be irrelevant to the issue. You are to consider the facts of the case and nothing else, and apply the same to the law.

Defendant was found guilty. He then moved in arrest of judgment because the indictment did not conclude according to article IV., section 31, of the Constitution. This motion was overruled and the defendant was sentenced to be hanged. He then appealed upon the following exceptions :

I. Because his honor erred, after defendant had interposed the plea of insanity and introduced testimony to sustain said plea,

in refusing to charge as requested by the defendant that, "If the defendant is proved upon this trial to be *non compos mentis*, the court is authorized to send him to the asylum."

II. Because his honor erred in charging the jury that said request involved matters outside of the case.

III. Because his honor erred in charging the jury, "It is my duty to give you the law and in giving you the law I cannot indulge in sympathy. It is a noble impulse of the human heart. It has its place, but its place is not here."

IV. Because his honor erred in charging the jury: "When they go into their room for their conscientious, impartial, deliberation under their oath, to ascertain whether or not the law has been violated, it is for them to say whether or not they can, in their consciences, give a reason why this prisoner should not be convicted. If so, it must be a reasonable conscientious doubt, not a doubt produced by sympathy or anything of that kind, it must be a doubt that comes out of the facts in the case."

V. Because his honor erred in charging the jury: "I am satisfied that you will take this case and decide it according to the law as I have given it to you. You must take it without sympathy; the kind of feelings that the human heart feels for the unfortunate, must not restrain you from doing your duty."

VI. Because his honor, by repeatedly charging the jury that they must not indulge in sympathy, but must do their duty, influenced the jury in reaching a conclusion by conveying to them the impression which the testimony left upon his own mind, and erred in so charging.

Defendant also excepts to the order of his honor, the presiding judge, overruling defendant's motion in arrest of judgment duly made, upon the following grounds:

I. Because the indictment was fatally defective in that it concluded "against the peace and dignity of the same State aforesaid."

II. Because said indictment was fatally defective in that it did not conclude "against the peace and dignity of the State."

*Mr. J. B. Howe,* for appellant.

*Mr. Murphy*, solicitor, contra.

February 5, 1888. The opinion of the court was delivered by

MR. JUSTICE McIVER.   Under an indictment for murder the defendant was convicted and appeals upon the several grounds set out in the record.   The defence relied on was that the prisoner was insane at the time the deceased was killed.   It does not appear that the prisoner was claimed to be insane at the time of the trial, and therefore incompetent to conduct his own defence, or instruct counsel in the management of his case, and hence we need not consider what would have been the proper course in such an event.

The first error assigned covered by the first and second exceptions, is that the Circuit Judge refused to charge the jury as requested by the counsel for defendant, "that if the defendant is proved upon this trial to be *non compos mentis*, the court is authorized to send him to the asylum," saying "that said request involved matters outside of the case."   We agree with the Circuit Judge, as this was a matter with which the jury had no concern.   The entire charge to the jury seems to be set out in the "Case," from which it appears that the jury were fully instructed as to the law of insanity and its effect, if established, so far as the province of the jury was concerned.   They were explicitly told that if they believed the prisoner was insane at the time the homicide was committed, he must be acquitted, and it would have been wholly outside of the issue which the jury were called upon to try to inform them as to what authority had been conferred by statute upon the judge in the event that the prisoner should prove to be insane at the time of the trial.   That was a matter with which the jury had nothing whatever to do. The province of the jury was simply to pass upon the issues of fact arising in the case, and they had nothing to do with the consequences of their verdict.   *State* v. *Gill*, 14 *S. C.*, 415.   See, also, *State* v. *Coleman*, 20 *S. C.*, 454–5.

The third, fourth, fifth, and sixth exceptions all impute error to the Circuit Judge in various forms for violating the provisions of the constitution in charging on the facts.   A careful consideration of the charge fails to disclose a single instance in which

the Circuit Judge either expressed or intimated any opinion as to the facts. The main ground of complaint seems to be his cautions to the jury not to allow their sympathies to influence their verdict. In this there surely was no error. The language of the Circuit Judge, which seems to be specially relied upon in support of this allegation of error, is taken from that portion of the charge in which the judge is explaining to the jury what is a reasonable doubt—that it must be a doubt growing out of the facts of the case, and not a doubt generated by sympathy for the accused. In this there was certainly no error, nor is it any intimation of the opinion of the Circuit Judge as to any of the issues of fact involved. It was simply a proper instruction for the guidance of the jury in forming their own opinion as to the facts, uninfluenced by improper considerations, or mere conjecture, not based upon any fact appearing in the case relevant to the issues involved.

The only remaining inquiry is whether there was any error in refusing the motion in arrest of judgment. The indictment concludes in these words, "against the peace and dignity of the same State aforesaid," whereas the Constitution, in art. IV., sec. 31, declares that "all indictments shall conclude, 'against the peace and dignity of the State.' " It will be observed that all the words required by the constitution are found in this indictment, and the only difference is that two additional words, "same" and "aforesaid," not in the constitutional provision, are used in this indictment. The question, therefore, is whether these additional words vitiate the indictment. It is quite clear that the added words do not in the slightest degree vary the sense, nor do they obscure it, but, on the contrary, rather make the language more plain and pointed. In the previous part of the section it is declared that "all prosecutions shall be conducted in the name of the State of South Carolina," and the additional words found in the conclusion of this indictment—"same" and "aforesaid"—only serve to point more plainly and distinctly to the particular State whose peace and dignity has been violated.

The question, however, has been adjudicated in this State in favor of the view which we adopt, that the conclusion of this indictment substantially conforms to the requirement of the con-

stitution. *State* v. *Washington*, 1 *Bay*, 120, 1 *A. D.*, 601 ;
*State* v. *Anthony*, 1 *McCord*, 285.   It is argued, however, that
these decisions were made under the constitution of 1790, in
which the words prescribed for the conclusion of an indictment
were not placed within quotation marks, whereas in the present
constitution such words are placed within quotation marks, show-
ing that it is necessary to use the prescribed words, *and no
others.*   While we must confess that we are unable to perceive
the force of this argument, it will not be necessary to consider it
further, inasmuch as the fact upon which it is based is wanting.
In the constitution of 1790, as it appears in 1 *Statutes at Large*,
page 189, the words in which every indictment is required to
conclude, are placed within quotation marks, just like the words
now prescribed by the present constitution, and hence the cases
above cited are direct authority for the conclusion herein adopted.

It seems to us that the correct view of the matter was taken
in the case of the *State* v. *Hill*, 19 *S. C.*, 435.   In that case
one of the grounds of the motion in arrest of judgment was that
the writ of *venire* did not run in the name of the State of South
Carolina, as required by section 31, of article IV., of the present
Constitution.   The writ commenced, "The State of South
Carolina, County of Spartanburg, to the sheriff of Spartanburg
County," and it was held that the addition of the words—
"County of Spartanburg"—did not impair the validity of the
mandate, as they might be regarded as surplusage.   So here,
although the constitution requires that all indictments shall con-
clude "against the peace and dignity of the State," yet the con-
cluding words of this indictment—"against the peace and dignity
of the *same* State *aforesaid*"—is a substantial compliance with
the mandate of the constitution, as the words italicised may be
regarded as mere surplusage.

The judgment of this court is, that the judgment of the Cir-
cuit Court be affirmed, and that the case be remanded to the
Court of General Sessions for Beaufort County, in the State of
South Carolina, in order that a new day may be assigned for the
execution of the sentence heretofore imposed upon the defendant
by the said Court of General Sessions.